IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| MOHAMMAD RAHIM WAHIDI, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )    1:26-cv-1033 (LMB/WBP) |
| | ) |
| PAUL PERRY, et al., | ) |
| | ) |
| Respondents. | ) |

ORDER

Petitioner Mohammad Rahim Wahidi ("Wahidi" or "petitioner"), a native and citizen of

Afghanistan, has filed a three-count Petition for Writ of Habeas Corpus ("Petition") under 28

U.S.C. § 2241, in which he asserts that he has been illegally detained by the U.S. Department of

Homeland Security's ("DHS") Immigration and Customs Enforcement ("ICE") since March 29,

2025. Specifically, he alleges that his continued immigration detention under 8 U.S.C. § 1226(c),

which has lasted for over fourteen months, violates his due process rights (Counts I and III).[1] He

also challenges the federal respondents' decision to detain him under 8 U.S.C. § 1226(c), arguing

that the government's allegations have no colorable basis under controlling Fourth Circuit law

(Count II).

Wahidi is currently detained at the Caroline Detention Center, which is within this Court's

jurisdiction and the basis upon which he is suing Paul Perry, the superintendent of the Caroline

---

[1] In Count III of his Petition, Wahidi argues that his detention violates due process under
Zadvydas v. Davis, 533 U.S. 678, 690 (2001) and Demore v. Kim, 538 U.S. 510, 527-28 (2003)
because his removal to his home country of Afghanistan "is not reasonably foreseeable[.]" [Dkt.
No. 1] at ¶ 68. Because Zadvydas applies to detention pursuant to a final order of removal issued
pursuant to 8 U.S.C. § 1231,Wahidi—who does not yet have a final order of removal—
"acknowledges this argument is novel as applied pre-final-order and raises it in the alternative."
Id.

Detention Center. Wahidi has also sued Todd M. Lyons, the Acting Director of ICE; Markwayne Mullin, the DHS Secretary; and Todd Blanche, the Acting Attorney General (collectively "the federal respondents"). For the reasons discussed in this Order, the Court will grant Wahidi's Petition in part, and the federal respondents will be ordered to provide him with a bond hearing before an Immigration Judge pursuant to 8 U.S.C. § 1226(a).

I.

Wahidi was initially admitted to the United States on a K-1 visa as the fiancé of a United States citizen. See [Dkt. No. 4] at 2 (citing [Dkt. No. 1-3], Decision and Order of the Immigration Judge, May 16, 2025 (hereinafter, "IJ Order"), at 1-2). In 2010, following his marriage, petitioner's status was adjusted to Legal Permanent Resident ("LPR"). Id.; see also [Dkt. No. 4-1] at ¶ 7. Wahidi has resided in Sterling, Virginia, with his U.S. citizen wife and their two U.S. citizen children. [Dkt. No. 1] at ¶ 7. He "has no criminal record[,]" and "is not charged with any criminal offense." Id.

On March 29, 2025, Wahidi was referred to U.S. Customs and Border Protection ("CBP") agents at Washington Dulles International Airport for an admissibility review when he returned to the United States from Turkey.[2] [Dkt. No. 1] at ¶ 21; see also [Dkt. No. 4-1] at ¶ 8. After CBP agents interviewed Wahidi, they arrested him and issued him a Notice to Appear pursuant to:

> "Section 237(a)(4)(B) of the Immigration and Nationality Act [("INA")], as an alien who has engaged, is engaged, or at any time after admission engages in any terrorist activity as defined in section 212 (a)(3)(B)(iv)(VI)(bb) of the Act, to wit: to commit an act that the actor knows or reasonably should know affords material support to any individual who the actor knows, or reasonably should know, has committed or plans to commit a terrorist activity."

> [Dkt. No. 4-2] at 1.

---

[2] His wife was on the same flight returning to the United States; she was "held approximately 12 hours and released" upon her arrival at Washington Dulles International Airport. [Dkt. No. 1] at ¶ 21.

2

On March 30, 2025, petitioner's counsel filed an emergency Petition for Writ of Habeas Corpus in this Court, Wahidi v. Trump, No. 1:25-cv-548 (E.D. Va.), "alleging violations of Wahidi's Fifth and Sixth Amendment rights arising from custodial interrogation without counsel and unlawful detention." [Dkt. No. 1] at ¶ 22. On March 31, 2025, the Court denied the petition without prejudice. Id. at ¶ 23.

On April 15, 2025, DHS filed an I-261 Form of Additional Charges of Inadmissibility/Deportability (hereinafter, "I-261 Form"). Id. at ¶ 27; see also [Dkt. No. 4] at 2; [Dkt. No. 4-3]. The I-261 Form charged Wahidi under 8 U.S.C. § 1227(a)(4)(B) with "engag[ing] in terrorist activity described in INA § 212(a)(3)(B)(i)(I), in that in an individual capacity or as a member of an organization, [petitioner] committed an act that [he] knew, or reasonably should have known, afforded material support . . . to a terrorist organization as defined in INA § 212(a)(3)(B)(vi)(I)." Id. at 2. Specifically, DHS alleged that Wahidi "worked in the embassy of Afghanistan in Madrid, Spain, on or behalf of the Afghan government, until on or about March 27, 2025, and that he continued working in that embassy following the August 15, 2021 takeover of the Afghan government by the Taliban." [Dkt. No. 4] at 3; see also IJ Order at 3. Wahidi "was appointed as Afghanistan's consul in Madrid in Feb[ruary] 2021, months before then-president Ashraf Ghani's pro-Western government collapsed." Id. at 3 (internal quotation marks and citation omitted). DHS further alleged that Wahidi "assumed the role of ambassador at the embassy under the Taliban's government from 2021 to 2025 and that the Taliban is a designated foreign terrorist organization." [Dkt. No. 4] at 3; see also IJ Order at 3-4. DHS charged petitioner with removability under the material-support to a terrorist organization bar. Id. at 4. Wahidi moved to terminate the removal proceedings. [Dkt. No. 1] at ¶ 30.

3

On May 16, 2025, an Immigration Judge, following a contested removability hearing, denied Wahidi's motion to terminate, and sustained all allegations and the charge of removability. Id. at ¶ 33; see also [Dkt. No. 4] at 3; IJ Order at 2. Specifically, the Immigration Judge, relying in part on Matter of A-C-M, 27 I&N Dec. 303, 307-10 (BIA 2018), concluded that Wahidi's alleged activity as an Afghan diplomat in Spain under the Taliban government had a "logical and reasonably foreseeable tendency to promote, sustain, or maintain the Taliban, much more than to a de minimis degree, although that would still be sufficient for finding material support." Id. at 5. On June 18, 2025, after Wahidi declined to file applications for relief, the Immigration Judge ordered him removed from the United States to Afghanistan. [Dkt. No. 1] at ¶ 34; see also [Dkt. No. 1-5], Matter of M-R-W-, AXXX-XXX-591 (BIA Apr. 6, 2026) (BIA Order). Wahidi timely filed an appeal of the Immigration Judge's decision to the Board of Immigration Appeals ("BIA").

On April 6, 2026, the BIA remanded the removal case to the Immigration Judge based on the intervening Fourth Circuit decision in Orzurumba v. Bondi, 153 F.4th 396 (4th Cir. 2025), which "held that Matter of A-C-M's material support [for terrorism] definition is too broad and 'reads the word "material" out of the statute.'" BIA Order at 2. The Orzurumba court instead defined material support as "support that is sufficiently substantial standing alone to help the terrorist organization accomplish its terrorist activities." Id. (quoting Orzurumba, 153 F.4th at 404). In its remand, the BIA instructed the Immigration Judge "to provide the parties with an opportunity to further develop the record and for the Immigration Judge to further consider [Wahidi's] removability based on the Fourth Circuit's controlling material support definition." Id. On April 8, 2026, the Immigration Judge ordered the parties to provide by April 24, 2026 "additional documents related to the material support issue" as defined in Oruzumba. [Dkt. No. 1]

at ¶ 53; see also [Dkt. No. 1-6] at 1. On June 2, 2026, the Immigration Judge denied Wahidi's motion to terminate proceedings and sustained the charge of removability. [Dkt. No. 7].

Wahidi filed a renewed Petition for Writ of Habeas Corpus on April 15, 2026. [Dkt. No. 1]. The federal respondents have filed an opposition, [Dkt. No. 4], and Wahidi has filed a reply, [Dkt. No. 5]. Finding that oral argument will not assist the decisional process, the Petition will be resolved on the papers submitted.

## II.

As an initial matter, the parties dispute whether Wahidi is properly detained under 8 U.S.C. § 1226(c)(1)(D), which mandates detention during removal proceedings of noncitizens who committed certain offense or are inadmissible under specific provisions of the INA, such as being "inadmissible under section 1182(a)(3)(B) . . . or deportable under section 1227(a)(4)(B)[.]" More specifically, 8 U.S.C. § 1182(a)(3)(B), which is known as the "material support bar," Ozurumba, 153 F.4th at 400, states that "[a]ny alien who has engaged in a terrorist activity . . . is inadmissible." "[T]he term 'engage in terrorist activity' includes a noncitizen who:

> in an individual capacity or as a member of an organization . . . commit[s] an act that the actor knows, or reasonably should know, afford material support . . .
>
> (aa) for the commission of a terrorist activity;
>
> (bb) to any individual who the actor knows, or reasonably should know, has committed or plans to commit a terrorist activity;
>
> (cc) to a terrorist organization . . . or to any member of such an organization; or
>
> (dd) to a terrorist organization . . ., or to any member of such an organization, unless the actor can demonstrate by clear and convincing evidence that the actor did not know, and should not reasonably have known, that the organization was a terrorist organization.

8 U.S.C. § 1182(a)(3)(B)(iv)(VI), (aa)-(dd).

Lastly, 8 U.S.C. § 1227(a)(4)(B) provides that any noncitizen "in and admitted to the United States shall, upon the order of the Attorney General, be removed if the alien . . . is described in subparagraph (B) or (F) or section 1182(a)(3)[.]" See 8 U.S.C. § 1227(a)(4)(B).

Wahidi argues that he is not subject to the "material-support bar" and his mandatory detention under 8 U.S.C. § 1226(c) therefore cannot be justified based on the facts in the record. [Dkt. No. 1] at ¶¶ 57-66. Specifically, he asserts that his duties as Charge d'Affaires of the Afghan Embassy in Madrid—which included "embassy administration for the internationally recognized Islamic Republic of Afghanistan[,]" "diplomatic correspondence with Spain[,]" "consular services for Afghan nationals[,]" and "maintenance of embassy property"—cannot "serve as a colorable [8 U.S.C. § 1226(c)] mandatory detention predicate under Ozurumba's controlling standard." Id. at ¶¶ 61, 63. He also asserts that "the Spanish government officially rejected Taliban authority over the embassy[;]" that "[t]he Taliban tried and failed to claim the property Wahidi managed[;]" and that Wahidi's duties as Charge d'Affaires of the Aghan Embassy in Madrid included providing "consular services to Afghan refugees who fled Taliban rule." Id. at ¶ 63.

Wahidi's arguments may have merit; however, the Court does not have jurisdiction to consider his claims regarding the merits of his removal case. See [Dkt. No. 4] at 8. It is undisputed that the jurisdiction-stripping language of 8 U.S.C. §§ 1226(e) and 1252(g) precludes such review, especially as an Immigration Judge has recently reviewed whether the conduct Wahidi is charged with constitutes material support of terrorism under the INA and the Fourth Circuit's recent holding in Ozurumba, see [Dkt. No. 1] at ¶ 61; see also [Dkt. No. 4] at 10; and has sustained the charge of removability. See [Dkt. No. 6]. As Wahidi acknowledges in his most recent filing, any review of the Immigration Judge's decision does not belong in this Court, but

must be routed through the BIA and, if necessary, a petition for review in the Fourth Circuit. See [Dkt. No. 7] at 2. Despite this concession, Wahidi attempts to distinguish his claim by arguing that this Court can side-step the jurisdictional bar to decide whether "conduct that cannot satisfy the controlling legal standard constitute[s] the kind of legally cognizable [Terrorism-Related Inadmissibility Grounds] predicate that justifies" detention under 8 U.S.C. § 1226(c). [Dkt. No. 1] at ¶ 58. This argument is unavailing, as Wahidi "necessarily requests that the Court consider the very same issues presented in [his] ongoing immigration case" which "'implicate[s] Section 1252(b)(9)'s jurisdiction-stripping provisions.'" [Dkt. No. 4] at 9-10 (quoting Trabelsi v. Crawford, No. 1:24-cv-1509 (RDA/LRV), 2024 WL 5497113, at *6 (E.D. Va. Dec. 2, 2024)). Accordingly, the Court declines to address this issue.

As to Wahidi's due process claim, "courts have found that prolonged detention without a proper bond hearing can violate due process." Rodriguez v. Bondi, No. 1:25-CV-00791-AJT-WBP, 2025 WL 2490670, at *3 (E.D. Va. June 24, 2025); see also Abreu v. Crawford, No. 1:24-CV-01782-MSN-WBP, 2025 WL 51475, at *4 (E.D. Va. Jan. 8, 2025), appeal dismissed, No. 25-6174, 2025 WL 2604455 (4th Cir. Apr. 22, 2025). "To determine if such prolonged detention without a bond hearing violates due process, district courts apply a five-factor balancing test." Id. at 5 (citation omitted). These five factors—known now as the Portillo factors—are

> (1) the duration of detention, including the anticipated time to completion of the alien's removal proceedings; (2) whether the civil detention exceeds the criminal detention for the underlying offense; (3) dilatory tactics employed in bad faith by the parties or adjudicators; (4) procedural or substantive legal errors that significantly extend the duration of detention; and (5) the likelihood that the government will secure a final order of removal.
>
> Portillo v. Hott, 322 F.Supp.3d 698, 707 (E.D. Va. 2018) (internal quotations and citations omitted).

7

"The first factor is given 'significant weight' due to the Supreme Court's 'concerns about prolonged detention.'" Abreu, 2025 WL 51475, at *5 (quoting Bah v. Barr, 409 F. Supp. 3d 464, 471 n.9 (E.D. Va. 2019)). "Courts in this district have consistently applied the Portillo factors to prolonged detention under § 1226(c)." Id. (citations omitted). And here, both parties agree that the Portillo factors apply to the facts at hand. See [Dkt. No. 5] at 4. For the reasons explained below, the Court finds that—under the Portillo framework—Wahidi's continued detention without an opportunity to be considered for release on bond, violates due process and mandates an individualized bond hearing.

The first factor, length of detention, weighs "heavily in [Wahidi's] favor as a prolonged and substantial burden on his liberty interest." Portillo, 332 F.Supp.3d at 707-08. As this Court explained in Portillo:

> Although the duration inquiry does not admit of hard and fast parameters, courts seem to agree that the constitutional case for continued detention without inquiry into its necessity becomes more and more suspect as detention continues past the one and a half month average and five month maximum thresholds cited by the Supreme Court in Demore v. Kim. This approach also aligns with the concerns expressed in Zadvydas v. Davis about detention in excess of six months.

> Id. at 707 (cleaned up).

When Wahidi filed his petition, he had been in ICE custody for approximately thirteen months. Because this amount of time exceeds the limits articulated in Demore and Zadvydas, the Court finds that Wahidi's continued detention without an individualized bond hearing is unreasonable and violates due process. Accord Mauricio-Vasquez v. Crawford, No. 1:16-cv-01422, 2017 WL 1476349, at *4 (E.D. Va. Apr. 24, 2017) (fifteen months); Mbalivoto, 527 F. Supp. 3d at 850 (twenty-two months); Songlin v. Crawford, No. 3:19-cv-895, 2020 WL 5240580, at *7 (E.D. Va. Sept. 2, 2020) (sixteen months); Abreu, 2025 WL 51475, at *5 (twenty-five, seventeen, and thirteen months).

8

The second Portillo factor, "which compares the duration of detention in ICE custody to the length of time served on the criminal sentence," also weighs in favor of Wahidi. Portillo, 322 F.Supp. at 708. Although the federal respondents "emphasize the seriousness of the charges against [p]etitioner in his immigration case[,]" it is undisputed that Wahidi "has not been sentenced to any criminal detention." [Dkt. No. 4] at 12; see also [Dkt. No. 5] at 6 ("Petitioner is an LPR with no criminal conviction."). As for the third and fourth factors, both parties agree that "[n]either party engaged in dilatory tactics[,]" and that there are no procedural or substantive legals errors that significantly extended the duration of detention in this case, especially as the BIA's remand was based on intervening law from the Fourth Circuit. [Dkt. No. 5] at 7-8; see also [Dkt. No. 4] at 13.

As to the fifth and final factor, "this Court finds that it is 'purely speculative' to say" what the Immigration Court will do. Abreu, 2025 WL 51475, at *6. As discussed above, the parties dispute whether there is sufficient evidence to support a finding that Wahidi provided material support to the Taliban under the Fourth Circuit's Ozurumba standard. Although the Immigration Judge recently sustained the charge of removability, the ruling "has set the stage for [p]etitioner's appeal to the [BIA], and, if necessary, a petition for review in the Fourth Circuit." [Dkt. No. 7] at 2; see also Santos Garcia v. Garland, No. 121CV742RDAIDD, 2022 WL 989019, at *7 (E.D. Va. Mar. 31, 2022) ("At this stage . . . with removal proceedings still ongoing and in light of the mixed appellate record the Court has reviewed, it is speculative to presume" how the Immigration Judge will rule). Furthermore, Wahidi has alleged that even if he is subject to a final order of removal, his executed removal to Afghanistan may present difficulties, as "the United States directly deported only about nine percent of Afghans subject to removal orders between

9

October 2022 and March 2026." [Dkt. No. 7] at 3. The Court therefore finds that "this factor stands in equipoise." Abreu, 2025 WL 51475, at *6.

On balance, with due regard to the first and "most important" factor, this Court finds that the Portillo factors weigh in favor of Wahidi. Given his ongoing, lengthy detention, due process mandates an individualized bond hearing. See Haughton v. Crawford, No. 116CV634LMBIDD, 2016 WL 5899285, at *9 (E.D. Va. Oct. 7, 2016). For all of these reasons, Wahidi's Petition, [Dkt. No. 1], is GRANTED IN PART, and it is hereby

ORDERED that, without releasing Wahidi pre-hearing, respondents provide Wahidi with an individualized bond hearing before an Immigration Judge pursuant to 8 U.S.C. § 1226(a) within 14 days of the date of this Order[3]; and it is further

ORDERED that respondents be and are ENJOINED from denying bond to Wahidi on the basis that he is detained pursuant to 8 U.S.C. § 1226(c); and it is further

ORDERED that, if Wahidi is granted bond, respondents be and are ENJOINED from invoking the automatic stay provision at 8 C.F.R. § 1003.19(i)(2); and it is further

ORDERED that if Wahidi is released on bond, the federal respondents—along with their officers, agents, servants, employees, attorneys, successors, and assigns, and all persons acting in concert with them—be and are ENJOINED from rearresting Wahidi unless he (1) commits a violation of any federal, state, or local law; (2) fails to comply with the conditions of his release;

---

[3] Wahidi's Petition requests an individualized bond hearing "before this Court or a federal magistrate judge, not before an immigration judge[,]" arguing that a bond hearing before an immigration judge "is not meaningful process." [Dkt. No. 1] at ¶ 77. Although the Immigration Court may have become more politicized under this administration, the Court is not aware of any caselaw entitling Wahidi to an individualized bond hearing before a district court or a magistrate judge. Wahidi argues that the Abreu and Portillo courts ordered an individualized bond hearing before a federal court. [Dkt. No. 5] at 13. The Abreu and Portillo courts simply ordered that the federal respondents provide petitioners with an individualized bond hearing; they did not order that the hearing be held by a district or magistrate judge.

10

(3) fails to attend a properly noticed immigration hearing; or (4) is detained pursuant to a valid, final order of removal.

The Clerk is directed to enter judgment in Wahidi's favor pursuant to Federal Rule of Civil Procedure 58, forward copies of this Order to counsel of record, and close this civil action.

Entered this 16ᵗʰ day of June, 2026.

Alexandria, Virginia

_____ /s/
Leonie M. Brinkema
United States District Judge

11